# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark S.,<br><br>Plaintiff,<br><br>v.<br><br>Andrew Saul,<br>  Commissioner of Social Security,<br><br>Defendant. | Case No. 18-cv-02936-HB<br><br>**ORDER** |

Karl Osterhout, 521 Cedar Way, Suite 200, Oakmont, PA 15139, for Plaintiff Mark S.

Tracey Wirmani, Special Assistant U.S. Attorney, Social Security Administration, 1301 Young St., Suite A702, Dallas, TX 75202, for Defendant Andrew Saul.

HILDY BOWBEER, United States Magistrate Judge[1]

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark S. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for supplemental security income ("SSI"). The matter is now before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 13, 16]. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

---

[1] The parties have consented to have a United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

## I. Background

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on January 16, 2015, alleging an onset of disability date of December 31, 2008. (R. 10.)[2] Plaintiff's applications were denied initially and on reconsideration, and he timely requested a hearing before an administrative law judge (ALJ). (R. 10.) The ALJ then convened a hearing, at which Plaintiff and vocational expert Beverly Solyntjes testified. (R. 10.)

On April 4, 2018, the ALJ issued a written decision denying Plaintiff's applications. (R. 10–27.) Following the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4), the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 13.) At step two, the ALJ determined Plaintiff had the following severe impairments: asthma, restrictive lung disease, chronic obstructive pulmonary disease (COPD), arthritis, myofascial pain syndrome, mild osteoarthritis of the hands, bilateral neuropathy of the hands, undifferentiated connective tissue disorder, cervical spinal arthritis, panic disorder with agoraphobia, post traumatic stress disorder (PTSD), generalized anxiety disorder, and occasional paranoid/delusional thinking. (R. 13.) The ALJ found at the third step that the impairments did not meet or equal the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14.)

At step four, the ALJ assessed Plaintiff's residual functional capacity (RFC).

---

[2] The Social Security Administrative Record ("R.") is available at Doc. No. 12.

(R. 18–25.)  As part of that assessment, the ALJ analyzed whether Plaintiff had any medically determinable physical or mental impairments and found that he did.  (R. 18–19.)  However, the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of the impairments were "not entirely consistent with the medical evidence and other evidence in the record."  (R. 19.)  The ALJ also analyzed and assigned evidentiary weight to the opinions of medical professionals, psychological consultants, and representatives of the Minnesota Department of Human Services, who all opined on Plaintiff's condition.  (R. 22–25.)  The ALJ ultimately found Plaintiff retained the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).[3]  Although the ALJ concluded Plaintiff could not perform his past work as a forklift driver, the ALJ found that Plaintiff would be able to perform several other medium, unskilled jobs, such as assembler or package sealer machine tender.  (R. 26.)  Accordingly, the ALJ determined Plaintiff was not disabled.  (R. 27.)

The Social Security Administration (SSA) Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (R. 1.)  Plaintiff then filed this action for judicial review of his denial of SSI.  He does not challenge the denial of his DIB claim.  (Pl.'s Mem. Supp. Mot. Summ.

---

[3] The ALJ found the following to be appropriate restrictions on Plaintiff's work: handle and finger bilaterally frequently; climb ladders, ropes, or scaffolds occasionally; balance, stoop, kneel, crouch, or crawl frequently; never work with exposure to unprotected heights or moving mechanical parts; occasionally work with exposure to dust, odors, fumes, pulmonary irritants and extreme cold; limited to performing simple, routine repetitive tasks; and occasionally responding to supervisors and coworkers, but never to the public.  (R. 18.)

J. at 1 n.1 [Doc. No. 14].)

Plaintiff argues the ALJ erred at the fourth step by concluding that Plaintiff had the RFC to perform medium work. (*Id.* at 1.) Specifically, Plaintiff challenges as insufficient the weight the ALJ gave to the opinions of one of Plaintiff's treating providers, Nurse Karen Leaman. (*Id.* at 1, 4–26.) Plaintiff also challenges the ALJ's discussion of the consultative examiner's opinion, the ALJ's findings regarding Plaintiff's physical impairments, and the ALJ's failure to consider Plaintiff's "stellar work history" in making his credibility determination. (*Id.* at 1.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited in the parties' memoranda. The Court will incorporate the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the SSA's denial of benefits is limited to determining whether substantial evidence on the record supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court

would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove his disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for SSI, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. Legal Standards Applicable to Step Four RFC Determination

An RFC assessment measures the most a person can do, despite his limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). In addition, "RFC is not simply a laundry list of impairments and limitations." *Gann v. Colvin*, 92 F. Supp. 3d 857, 884 (N.D. Iowa 2015). Thus, the ALJ may distill what may be numerous impairments and limitations

into a descriptive phrase, as long as it accurately captures a claimant's abilities in a work setting. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding the ALJ's description of the claimant as "able to do simple, routine, repetitive work" adequately accounted for the claimant's borderline intellectual functioning).

### B. The ALJ's Consideration of Medical Source Evidence

#### 1. The ALJ Properly Evaluated Nurse Leaman's Opinion

Plaintiff's first challenge is that the ALJ gave "little weight" to the opinion of Karen Leaman, a certified nurse practitioner and one of Plaintiff's primary caregivers. (R. 24.) Plaintiff saw Leaman intermittently from 2015 through 2017 for medication management and mental health care. (R. 744, 1001, 1059, 1082, 1141, 1195.) On October 26, 2017, Leaman wrote that, in her opinion, Plaintiff "would not be able to sustain competitive employment" because he struggled with memory and concentration, had "considerable anxiety" which made it difficult for him to use public transportation and keep appointments, and was dependent on social work and case management support. (R. 774.) She also described Plaintiff as having numerous "marked" limitations and further "extreme" limitations in understanding, remembering, concentrating, carrying out instructions, maintaining a normal work rhythm, maintaining socially appropriate behavior, and responding to challenges. (R. 776.) Leaman opined that these limitations were likely to produce "good" days and "bad" days, and estimated that, as a result, Plaintiff would be absent from work more than three days per month. (R. 777.) The ALJ concluded Leaman's written opinion was not supported by her treatment notes,

6

evaluation findings, or other evidence in the record and therefore assigned it "little weight." (R. 24.)

Plaintiff first argues that the ALJ's opinion was deficient because it failed to acknowledge that Leaman's opinion was based on her treating relationship with Plaintiff. (Pl.'s Mem. Supp. Mot. Summ. J. at 10.) Plaintiff argues this was a significant error because the opinions of treating sources are generally entitled to more weight. 20 C.F.R. § 416.927(c)(2). But the Court notes Plaintiff's claim was filed before March 27, 2017, so Leaman did not qualify as an "acceptable medical source." *See* 20 C.F.R. §§ 416.902(a)(7)–(8). Therefore, this opinion was not from a "treating source" and did not qualify as a "medical opinion." 20 C.F.R. §§ 416.927(a)(1)–(2).

Furthermore, the ALJ referred to several pieces of evidence to support his conclusion that Leaman's opinion was not supported by the record. First, as the ALJ pointed out, Leaman's own treatment notes do not reveal that Plaintiff was experiencing such extreme limitations. (R. 23–24.) On several occasions between October 2015 and August 2017, Leaman observed that Plaintiff had a normal rate of thought process, seemed alert with a fair ability to concentrate, had intact immediate recall memory, and demonstrated fair insight and judgment. (*E.g.*, R. 850, 857, 898, 1004, 1062, 1083, 1144, 1198.) She frequently described him as "pleasant" or "engaged," and described his appearance only as "casually groomed." (*E.g.*, R. 849–50, 857, 987, 927, 1062, 1082, 1144.) These and similar findings undermine Leaman's opinion that Plaintiff was extremely limited in his ability to "understand and remember detailed instructions," "maintain attention and concentration for more than two-hour segments," and "maintain

7

socially-appropriate behavior and adhere to basic standards of neatness and cleanliness." (R. 776.)

Second, the ALJ pointed out that Leaman's treatment notes suggested that Plaintiff's "mental status examinations were generally unremarkable" and Plaintiff was responsive to treatment. (R. 24.) When Leaman first started seeing Plaintiff in August 2015, he complained of trouble sleeping at night and anxiety that caused him to not want to leave his room. (R. 836.) Leaman recommended he try a "low dose" of Zoloft and return to see her the next month. (R. 836–37.) At their next meeting on October 1, 2015, Plaintiff reportedly did not remember Leaman from his previous visit. (R. 849.) She described him as "initially pretty unengaged" and preoccupied with having forgotten to use his inhaler that morning, but there were also some indications that the Zoloft was improving Plaintiff's anxiety and mood, and he was sleeping better at night. (R. 849.) A month later Leaman increased Plaintiff's Zoloft dosage (R. 857) and did so again in January 2016 (R. 898). At their visit in February 2016, Plaintiff reported to Leaman that "his anxiety is a bit less as the [Zoloft] was increased at last visit." (R. 926.) Leaman observed that Plaintiff was experiencing some psychotic side effects, such as hearing voices and music, but Leaman felt that the issues could be treated and proscribed an additional medication. (R. 927.)

The following month Leaman opined that it was "quite unlikely that pt could return to work given his mental health issues and current cognitive functioning," but ordered that he continue with behavioral healthcare, medications, and psychology treatment, and return to see her the next month. (R. 948.) In May 2016 Plaintiff reported

8

that he was still taking the Zoloft and was "managing okay." (R. 987.) Leaman noted that while he continued "to present as scattered and anxious," he was "less anxious than when first seen." (R. 988.) On September 6, 2016, Leaman wrote that Plaintiff was "overall managing okay, managing panic sx with learned strategies" and she thought the medications were helpful. (R. 1062.) On December 29, 2016, Leaman noted that Plaintiff reported to her that "overall his anxiety is well managed." (R. 1246.) Leaman's diagnostic impression of that visit was that Plaintiff still had an anxiety disorder, but that his depression with psychotic side effects was "in remission." (R. 1247.) She described him as "overall doing very well, anxiety sx are much improved, his mood is overall good with no evidence of psychotic sx." (R. 1247.) In January 2017 Plaintiff told Leaman that he "finds the Zoloft very helpful." (R. 1264.) After that appointment, Leaman's notes reflect her assessment that Plaintiff "continues to function well overall with more community and hospital support." (R. 1265.)

In June 2017 Leaman saw Plaintiff again, and although he reported that he was sleeping less well and had some concerns about getting assigned a new ARMHS case worker, Leaman observed that his overall mood was good and he was doing "relatively well." (R. 1143–44.) In August 2017 Leaman described Plaintiff as "at baseline, finding his current medications helpful, has a sense of humor today, has helpful people in community working with him." (R. 1247, 1198.) The ALJ reasonably concluded that these treatment notes overall were inconsistent with Leaman's opinion in October 2017 that Plaintiff had "extreme limitations" that would preclude him from sustaining competitive employment.

9

Third, at the same time Plaintiff was seeing Leaman, he was also receiving treatment from several other care providers whose notes, like Leaman's, reflect that Plaintiff's symptoms were improving with treatment. The ALJ was tasked with considering Leaman's opinion "along with the evidence as a whole," and according it less weight if it was inconsistent or contrary to the rest of the record, including the notes of other providers. *Krogmeier*, 294 F.3d at 1023. Contemporaneous with his treatment by Leaman, Plaintiff was also receiving therapy from Lisa Legrand, Ph.D. He first met with Dr. Legrand in August 2013 with complaints of panic attacks, which he estimated he was having approximately once a day. (R. 478.) He was re-referred to Dr. Legrand by Leaman in November 2015 for treatment of a panic disorder with agoraphobia and possible delusional/paranoid thinking. (R. 876.) Over the course of his treatment, Plaintiff reported to Dr. Legrand that he was generally doing well and remaining stable (R. 982, 1027, 1271); "expressed motivation to try to get out of the house more" (R. 1027); "feeling 'somewhat' better emotionally and making an effort to eat somewhat more healthfully" (R. 1068); and, eventually, that he was no longer concerned about having panic attacks (R. 1259). Plaintiff repeatedly told his care providers that he perceived that the medications helped to control his symptoms. (R. 706, 1297, 1126.) Accordingly, the ALJ reasonably concluded that Leaman's October 2017 opinion was also inconsistent with the contemporaneous treatment notes of other providers, such as Dr. Legrand.

Fourth, the ALJ specifically noted that Leaman's recommended course of treatment was relatively conservative. (R. 24.) Leaman never recommended Plaintiff for

"intensive" mental health treatment (R. 24) and instead thought Plaintiff only needed to continue on his medication (R. 1063, 1198, 1265), follow-up with his other care providers (R. 1144, 1198, 1265), and return to see Leaman as needed (R. 1144, 1198, 1247). An ALJ may assign a medical opinion less weight when the opinion is inconsistent with medical records that show that the claimant responded to conservative medical treatment. *See*, *e.g.*, *Rideout v. Berryhill*, 681 F. App'x 540, 543 (8th Cir. 2017); *Perkins v. Astrue*, 648 F.3d 892, 898–99 (8th Cir. 2011). Taken as a whole, the evidence of record supports the ALJ's determination to accord Leaman's opinion little weight.

Plaintiff argues the ALJ's conclusion was deficient in other ways. First, he complains that the ALJ did not adequately consider Leaman's statement that Plaintiff requires "considerable social work and case management support" as part of the context of Plaintiff's functioning. (R. 774; Pl.'s Mem. Supp. Mot. Summ. J. at 12–13.) But the ALJ explicitly noted during the step three analysis that Plaintiff "gets assistance with everyday tasks through an independent living skills (ILS) worker" who "assists him with grocery shopping and laundry," but did not attend Plaintiff's medical appointments since Plaintiff was able to go to those alone. (R. 18–19.) The ALJ also noted that Plaintiff was able to live independently and maintain his own living space, cook, and take out his garbage. (R. 17, 790.) The ALJ was not obligated to reiterate those same considerations when conducting his step four analysis. *See Owen v. Astrue*, 551 F.3d 792, 801–02 (8th Cir. 2008) (finding that ALJ's failure to include consideration in RFC finding that he discussed elsewhere in opinion was not an error); *Hepp v. Astrue,* 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that an arguable deficiency in opinion-writing technique does

11

not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.") (internal quotation marks omitted).

Plaintiff also argues that the ALJ erred in assigning substantial weight to the opinions of State Agency psychology consultants who reviewed the record in March and October 2015. (R. 25; Pl's Mem. Supp. Mot. Summ. J. at 24.) Plaintiff argues the opinions were "outdated" by the time the ALJ reviewed them because they were issued two years before Leaman issued her opinion in 2017. (Pl's Mem. Supp. Mot. Summ. J. at 24–25.) But Plaintiff does not identify any additional evidence that he believes would have impacted the consultants' opinions, and indeed, as outlined above, the trajectory of Plaintiff's mental health treatment from 2015 (when the consultants reviewed the record) to October 2017 (when Leaman issued her opinion) was largely positive. The Court sees no reason to conclude that the consultants would have come to a different conclusion if they had been writing in 2017. And to the extent Leaman's opinion conflicts with those of the agency's consultants, it is the ALJ—not this Court—who is "charged with the responsibility of resolving conflicts among medical opinions." *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ evaluated the conflicting evidence in the record and determined that the great thrust of it did not support Leaman's written opinion. (R. 24.)

Finally, Plaintiff argues that the ALJ should have contacted Leaman for clarification of her opinion, or otherwise sought to augment the record. But Plaintiff bears the burden of proof. *See Roth*, 45 F.3d at 282. Moreover, the ALJ was not required to contact Leaman after determining her opinion was unreliable. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (finding that an ALJ is not required to recontact a

treating physician "whose opinion was inherently contradictory or unreliable"). Accordingly, the Court finds the ALJ's decision to accord Leaman's October 2017 opinion "little weight" was well-reasoned and supported by substantial evidence.

### 2. The ALJ Properly Evaluated Dr. Barron's Opinion

Plaintiff also argues the ALJ erred in his evaluation of the April 2015 opinion of consultative psychologist Craig Barron, Psy.D. (Tr. 23; Pl.'s Mem. Supp. Mot. Summ. J. at 26.) Dr. Barron evaluated Plaintiff on April 2, 2015 and considered his medical records up to that point. (R. 674–75.) Dr. Barron concluded that Plaintiff would be able to communicate, comprehend, and retain simple directions in an unskilled competitive work environment. (R. 677.) He also opined that Plaintiff would be able to maintain and perform a job if he were "restricted to very brief, infrequent, superficial interactions with fellow workers and supervisors." (R. 678.) The ALJ gave Dr. Barron's opinion substantial weight because it was consistent with the overall evidence and Plaintiff's course of treatment. (R. 23.)

Plaintiff argues the ALJ erred when he adopted most of Dr. Barron's limitations into his RFC finding, but did not include Barron's prescription that Plaintiff be limited to "very brief, infrequent, and superficial interactions with fellow workers and supervisors," and did not explain why. (Pl.'s Mem. Supp. Mot. Summ. J. at 27.) Instead, the ALJ limited Plaintiff to "occasionally" responding appropriately to supervisors and coworkers (R. 18), which Plaintiff believes is materially different.

"Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel,* 143 F.3d 383, 386 (8th

Cir. 1998). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* While "'some medical evidence' must support the determination of the claimant's RFC," *Eichelberger*, 390 F.3d at 591, "there is no requirement that an RFC finding be supported by a specific medical opinion," *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). "While it may [be] preferable for the ALJ to discuss a [medical opinion] in more depth," the conclusions drawn from a medical opinion are valid if "there is substantial evidence in the record supporting the ALJ's finding." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). And importantly here, an ALJ is not required to adopt all limitations proposed by Plaintiff's healthcare providers—even if the ALJ has accorded that provider's opinion substantial weight. *Cannady v. Colvin*, No. 4:14-CV-00372-NKL, 2015 WL 139762, at *5 (W.D. Mo. Jan. 12, 2015).

The ALJ cited numerous sources from the record to support his findings, including his conclusion that Plaintiff should be limited to occasional interactions with supervisors and coworkers. (*See* R. 22–25.) For example, the record reveals that Plaintiff regularly interacted with doctors, therapists, and case workers, and often for sustained periods of time. During many of these interactions Plaintiff was reportedly cooperative, with a normal mood and affect. (*E.g.*, R. 22, 456, 526, 543, 575, 759.) The ALJ's findings are further supported by records demonstrating that Plaintiff visited local businesses (R. 1452), sustained relationships with loved ones (R. 1003, 1082), and maintained his

14

housing situation despite there being a large number of other people in the home (R. 1003, 1109, 1143). Additionally, in his Function Report Plaintiff indicated that he got along well with authority figures and was able to follow written and spoken instructions. (R. 282–83, 290–91, 323–324.)

The Court therefore concludes the ALJ's RFC finding that Plaintiff should be limited to occasionally responding to supervisors and coworkers is supported by substantial evidence. The ALJ did not err by failing to incorporate aspects of Dr. Barron's opinion that might be interpreted as suggesting otherwise.

### C. The ALJ's RFC Finding Regarding Plaintiff's Physical Impairments is Supported by Substantial Evidence

Plaintiff also argues that the ALJ's RFC determination as to his physical impairments was not supported by substantial evidence. The ALJ determined that Plaintiff could perform a range of medium work based, in part, on the opinions of the state agency medical experts. (R. 18–22.) James Stevenson, M.D., made the initial determination in March 2015, when he opined that Plaintiff was able to perform medium work from December 31, 2008 through March 31, 2014, and able to perform light work from then on. (R. 92–95.) In October 2015, Cliff Phibbs, M.D., conducted a reconsideration review and concluded that Plaintiff was able to perform medium work for the entire period from December 2008 through the date of his review. (R. 123–25.) The ALJ stated that he was assigning some weight to Dr. Phibbs' opinion because it was "generally consistent with evidence received at the hearing level." (R. 22.) He adopted some of the limitations Dr. Phibbs suggested into the RFC and added additional

15

manipulative limitations to accommodate Plaintiff's hand impairments. (*Id.*) Plaintiff argues that by failing to explain why he did not adopt Dr. Stevenson's opinion that Plaintiff was only able to perform light work beginning in April 2014, the ALJ committed reversable error.[4]

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger*, 390 F.3d at 591. The ALJ's RFC findings need not be supported by a specific medical opinion, such as the opinion of Dr. Stevenson. *Hensley*, 829 F.3d at 932. Instead, an RFC determination is an administrative assessment, based on the totality of the evidence. *See Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004).

The ALJ reviewed Plaintiff's medical records and provided a thorough discussion of the evidence supporting the RFC for medium work. For example, the ALJ noted that Plaintiff was first treated for back pain in February 2012 when he exhibited some tenderness in his lumbar spine. (R. 19, 394.) Plaintiff was referred for physical therapy

---

[4] Plaintiff argues that the ALJ's decision to accord some weight to Dr. Phibbs's opinion was problematic in part because Dr. Phibbs stated that he was "affirm[ing]" Dr. Stevenson's initial determination without further explanation. (Pl.'s Mem. Supp. Mot. Summ. J. at 29–30.) But Dr. Phibbs did elaborate on his findings when he explicitly indicated that "overall a medium [RFC] seems appropriate, see FOFAE [findings of fact and analysis of evidence]." (R. 125.) Moreover, given that the ALJ's RFC determination was not based on any one medical opinion and instead considered the entirety of Plaintiff's medical records, to the extent there is a discrepancy between the two opinions, it is largely beside the point.

and an x-ray at that time, but he did not pursue either. (R. 19, 394, 406.) Later, in January 2015, Plaintiff went to physical therapy for help with balancing and weakness, but the therapist who treated him suspected that Plaintiff did not give his full effort during testing. (R. 19, 639–640.) Plaintiff complained of lower back pain at a visit to his doctor in August 2015, but reported that he had not tried to treat it and did not want any form of treatment that was "too serious." (R. 19, 830.)

In 2016 Plaintiff was seen by rheumatologist Ronal Molony, M.D., with complaints of diffuse musculoskeletal issues, including joint and spinal tenderness, tingling in his legs, and pain. (R. 20, 888, 974, 1056.) Dr. Molony considered that Plaintiff might be exhibiting signs of early arthritis or neuropathy, but observed that Plaintiff had no significant swelling in his joints and had normal back and joint range of motion. (R. 20, 891, 974, 1056.) Ultimately, Dr. Molony recommended Plaintiff continue with a conservative course of medication and treatment. (R. 20, 891, 975, 1056, 1288–89.) In February 2017, when Plaintiff's attorney asked him to complete a disability evaluation, Dr. Molony noted that Plaintiff had not reported any specific disabling symptoms. (R. 20, 1288–89.)

Plaintiff has also received treatment for his asthma, restrictive lung disease, and COPD. From 2012 to 2017, Plaintiff reported shortness of breath, but examination and testing repeatedly revealed that Plaintiff's respiratory functioning was normal. (*E.g.*, R. 21, 829, 882, 891, 918, 934, 1135.) Additionally, Plaintiff seemed to experience some symptom relief when he used inhalers (R. 21, 1128), and at least one care provider believed that anxiety was the main cause of his breathing problems (R. 21, 829).

These record citations undermine Dr. Stevenson's opinion that beginning in April 2014, Plaintiff could only perform light work. The ALJ ultimately observed that Plaintiff's medical records documented "a number of physical ailments" but did not "reveal any significant deficits or corresponding limitations based on the evaluations and tests performed." (R. 21.) Based on that lack of objective evidence and the conservative course of treatment recommended by virtually all of Plaintiff's providers, the ALJ concluded that an RFC of medium work, with further limitations, was appropriate. (R. 21–22.) The ALJ did not "simply pick a higher exertional level finding to support his denial" (Pl.'s Mem. Supp. Mot. Summ. J. at 31), but rather restricted Plaintiff's RFC based on credible limitations supported by the record. The Court therefore finds the ALJ's determination to be within the reasonable "zone of choice." *See Owen*, 551 F.3d at 798.

### D. The ALJ Correctly Evaluated Plaintiff's Subjective Factors

Plaintiff's final argument is that the ALJ erred when he failed to acknowledge Plaintiff's "stellar work history." (Pl.'s Mem. Supp. Mot. Summ. J. at 35.) A claimant's work history is one "subjective" factor to be considered in evaluating a claim for disability benefits. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). However, the ALJ need not explicitly discuss each factor. *Goff*, 421 F.3d at 795; *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered.")

Here, although the ALJ did not mention Plaintiff' work history, he did discuss several other factors in the *Polaski* framework, including inconsistencies between Plaintiff's alleged symptoms and the medical record, Plaintiff's daily activities, and the effectiveness of his prescribed medication. (R. 19–25.) While "it might have been better if the ALJ had referred specifically to [Plaintiff's] work record" when making his assessment, "the ALJ was not required to refer to every part of the record" to support his credibility determination. *Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007). His failure to mention Plaintiff's work history does not constitute a reversible error. *Id.* Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints when making his RFC determination.

### E. Conclusion

The ALJ did not err in determining at the fourth step that Plaintiff could perform medium work. The ALJ properly considered conflicting medical evidence and medical opinions and accounted for Plaintiff's subjective factors in determining Plaintiff's RFC.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Mark S.'s Motion for Summary Judgment [Doc. No. 13] is **DENIED**; and

2. Defendant Andrew Saul's Motion for Summary Judgment [Doc. No. 16] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 4, 2020   s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge